# United States Court of Appeals

## For the Eighth Circuit

_____

No. 24-3608

_____

Weems Industries, Inc., doing business as Legacy Manufacturing Company

*Plaintiff - Appellant*

v.

Teknor Apex Company

*Defendant - Appellee*

_____

No. 25-2956

_____

Weems Industries, Inc., doing business as Legacy Manufacturing Company

*Plaintiff - Appellant*

v.

Teknor Apex Company

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: June 9, 2026
Filed: July 30, 2026

_____

Before COLLOTON, Chief Judge, ARNOLD and GRASZ, Circuit Judges.
_____

ARNOLD, Circuit Judge.

Weems Industries, Inc., and Teknor Apex Company both make and sell water hoses. When Teknor introduced certain fluorescent green and fluorescent yellow hoses to market, Weems brought suit on the ground that the hoses infringed on its registered trademark in "the color chartreuse as applied to the body of its water hoses." It laid federal claims under the Lanham Act, *see* 15 U.S.C. §§ 1114(1), 1125(a), and related claims under Iowa common law. Teknor countered by arguing, among other things, that the district court[1] should cancel Weems's trademark registration and dismiss Weems's claims. *See Lovely Skin, Inc. v. Ishtar Skin Prods., LLC*, 745 F.3d 877, 883 (8th Cir. 2014). After holding a bench trial, the district court issued a very thorough opinion agreeing with Teknor, canceled the registration, and therefore dismissed Weems's claims. It also awarded Teknor attorneys' fees. Weems appeals the cancellation of registration and the fee award, but we affirm.

In siding with Teknor, the district court held that Weems's mark was invalid because the color chartreuse on water hoses is a functional feature and because the color had not acquired the distinctiveness that valid trademarks must have. Either reason was sufficient on its own for the court to cancel Weems's registration. Because the district court correctly held that chartreuse on water hoses is a functional feature, we do not decide whether the district court's conclusion regarding distinctiveness was correct as well.

A product feature is "functional" and cannot serve as a trademark "if it is essential to the use or purpose of the article or if it affects the cost or quality of the

_____

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa.

-2-

article." *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001). The reason that a functional feature cannot serve as a trademark is that "[i]t is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time," after which competitors may use the innovation. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995). If a product's functional features could be trademarked, the trademark owner could obtain a perpetual monopoly over those features, inhibiting competition and product innovation. *See id.* at 164–65. The court's determination that a product's feature is a functional one is a factual finding that we review for clear error. *See Prufrock Ltd. v. Lasater*, 781 F.2d 129, 132 (8th Cir. 1986); *see also* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 7:71 (5th ed. June 2026 Update) ("McCarthy").

The district court correctly recognized that since Weems had registered its color mark on the principal register, it was entitled to a rebuttable presumption that the mark is valid and thus non-functional. *See* 15 U.S.C. §§ 1057(b), 1115(a). But the district court did not clearly err in holding that Teknor had "firmly rebutted" the presumption.

Most important, Weems itself had touted the functional advantage that its fluorescent hoses provided. As the court found on an ample record, "Weems undertook aggressive efforts to tout the safety benefits of the 'Hi-Vis' color with regard to" its hoses. For example, it directed sales representatives and marketing agencies to emphasize to retailers that its hoses' color made them highly visible and thus safer, preventing accidents due to tripping. The record is replete with evidence that Weems also emphasized this safety feature in its advertisements and on its packaging and that its promotion of this feature of its hoses wasn't isolated or unintentional. "If a seller advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of functionality." McCarthy § 7:74.

Teknor provided other evidence to support its contention that the color of Weems's hoses was functional. For example, it presented evidence of patents that describe the functional advantage that chartreuse provides by increasing the visibility of objects ranging from road signs to softballs. Courts have found evidence from patents particularly helpful in determining if product features are functional. *See Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010). And Teknor presented the testimony of a color expert who explained that chartreuse makes water hoses easier to see, especially in low light. Even Weems's own color expert acknowledged that yellow-green is a high visibility color.

But Weems says that a feature can be functional only "when it constitutes an improvement in the operation of the goods," and, Weems continues, the chartreuse color on water hoses doesn't make them operate any better. There is no legal support for Weems's narrow understanding of functionality. The case that Weems insists supports its view, *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174 (2d Cir. 2021), doesn't help. That case involved devices called mixing tips that dentists use to create impressions of teeth. *See id.* at 177. The court held "that the colors signify mixing tip sizes, enabling users to more easily" retrieve the mixing tip they need. *See id.* The relevant point for us is that the color of a tip didn't improve its operation in the sense that Weems urges. For example, the color red didn't make tips operate or perform better than the color blue. Rather, the color of the tips served a different function—a size identifier—that could not be trademarked. Similarly here, even if the color of Weems's hoses didn't make them more durable, powerful, or reliable, the color did make them safer, which would certainly affect their quality and thus render their color a functional feature. *See TrafFix Devices*, 532 U.S. at 32.

Weems also invites us to disregard the patent evidence Teknor presented on the ground that those patents didn't involve water hoses. But why would that matter? The critical point is that fluorescent greens and yellows can make products more visible

and, depending on the product at issue, safer. We need not close our eyes to that fact simply because the patents didn't involve water hoses.

Last, Weems says that Teknor could select other colors for its hoses that would make them highly visible. Even if that's true, "competitors need not explore other design possibilities" when a product feature, as here, affects the quality of the good. *See Pocket Plus, LLC v. Pike Brands, LLC*, 53 F.4th 425, 434 (8th Cir. 2022).

For the reasons indicated, we conclude that the district court did not clearly err in holding that the color of Weems's hoses was functional and so could not be trademarked.

We turn to Weems's challenge to the district court's award of over three million dollars in attorneys' fees. The Lanham Act provides that a court may award attorneys' fees to a prevailing party "in exceptional cases." *See* 15 U.S.C. § 1117(a). "Exceptional" in this context means what it usually means—"uncommon, not run-of-the-mill." *See Safeway Transit LLC v. Discount Party Bus, Inc.,* 954 F.3d 1171, 1182 (8th Cir. 2020). District courts may consider "the totality of the circumstances" to determine whether a case is exceptional, though generally an exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). We review the court's decision to award attorneys' fees for an abuse of discretion. *See Pocket Plus*, 53 F.4th at 434.

The district court explained that its determination that the case was exceptional didn't have so much to do with the weakness of Weems's case as with Weems's conduct before the United States Patent and Trademark Office (USPTO), its trial-related conduct, and its "continued misapplication of the functionality legal

standard." We discern no abuse of discretion in the court's conclusion that these three circumstances make this case exceptional under § 1117(a).

Weems was not forthcoming with the USPTO, leading to the registration of a dubious trademark that Weems then used as a sword against its competitors. As the district court recounted in great detail, Weems was applying to register chartreuse on its hoses as a trademark while it was at the same time actively promoting in its marketing materials the safety benefit that chartreuse provides on those hoses. Weems told the USPTO that within the industry, a hose's color isn't meant to be functional. An examining attorney at the USPTO nonetheless at first refused to register the mark and asked Weems to provide certain information, including "[a]n explanation as to whether the identified color(s) serve(s) any purpose as used on the goods" and for "[a]ny available advertising, promotional or explanatory literature concerning the goods, particularly any material that relates specifically to the applied-for color mark." Providing caselaw with supporting examples, the examining attorney explained that a color cannot be trademarked "if it yields a utilitarian or functional advantage," such as increasing the visibility of a product.

Rather than send the USPTO any of its numerous promotional items that emphasized its hoses' increased visibility, however, Weems selected ones that didn't promote hose visibility (and then worked for years to scrub any references to its hoses' high visibility from its advertisements). It even told the USPTO that, though the color of its hoses "has the potential to be more visible than some other colors[,] . . . any visibility attribute is purely incidental to the true purpose of the mark, namely to identify the source of Applicant's" hoses. And Weems's lack of candor was hardly inadvertent. The record reveals that Weems's Vice President and Director of Marketing wrote in an email to an employee that the USPTO would "take away" its registration "if our competition sends them one of our labels stating safety green. Filing to attain a trade mark on color is like a hail mary pass, they are almost never successful." The district court very reasonably concluded "that Weems'

conduct in concealing its advertising about the safety benefits of the chartreuse color mark was part of a strategy to obtain a trademark registration and then aggressively enforce the registered mark against its competitors, despite being aware that full disclosure to the USPTO would have resulted in the registration being denied."

As for Weems's trial-related conduct, the district court observed that Weems objected to over seven hundred of Teknor's trial exhibits, roughly 85% of them, and that "[c]learly no rational thought, or thought of any kind, went into the majority of the objections." More damningly, the court also found on an ample record that much of the testimony of Weems's principal officers was "plainly incredible (i.e., false) as to several important issues."

The final reason the court deemed the case exceptional was that, though Weems stated the correct legal standard for determining functionality, it then assiduously ignored the most relevant part of that standard—that the product feature affect the "quality of the article"—even after the court had found that was why the color chartreuse was a functional feature of the hoses. The court said this "continued failure to focus on the correct legal standard" helped "tip[] this case into potentially exceptional territory."

Weems says that it was an abuse of discretion for the court to conclude that these circumstances justify a fee award. It says, for instance, that Teknor also engaged in litigation misconduct and misstated the functionality standard. But the district court in fact gave some weight to Weems's argument about Teknor's misconduct, particularly during discovery, and for that reason reduced the requested fees by twenty percent, while noting that Weems's evidentiary objections "especially lack[ed] merit."

And we are not convinced that the record bears out Weems's contention that Teknor also misstated the functionality standard. The district court observed that even

if Teknor was also "imprecise in its arguments at times," the court thought it "especially aggravating that Weems continued to" focus on the wrong part of the functionality standard. Further, even if Weems mentioned the relevant part of the governing standard in passing, the district court is in the better position to determine which party, if either, failed to give enough attention to governing legal principles, as the district court has dealt with the case for nearly five years (including holding a bench trial), and so has had a front-row seat to the parties' positions and how they have shifted over time. *See Safeway Transit*, 954 F.3d at 1183.

Weems also asserts that the court's finding that it deliberately withheld information from the USPTO is clearly erroneous. It says that it "was upfront with the USPTO," advising that chartreuse is a bright color that has the potential to be more visible than other colors. But the record makes clear that Weems didn't provide the materials that the USPTO requested because Weems was concerned that if it did the USPTO would not register the trademark. And rather than be forthcoming, Weems merely downplayed the importance of chartreuse's function even though it was in the midst of an advertising campaign emphasizing that very thing. We see no error here, much less a clear one.

In addition, Weems maintains that the court should not have given any weight to Weems's conduct before the USPTO because the court had already granted summary judgment to Weems on that issue. That's not so. What the court did was something else entirely: it granted summary judgment on Teknor's counterclaim that Weems had procured the registration by fraud. As the district court noted, that counterclaim was based on an alleged misrepresentation that Weems's president made about Weems being the exclusive provider of chartreuse water hoses; it wasn't based on Weems's withholding of information. Weems nonetheless directs our attention to a part of the summary-judgment opinion where the court remarked that one of Teknor's arguments was "haphazardly argued and plainly unproven." Weems says that the court was commenting on Teknor's theory that Weems deliberately withheld

information from the USPTO. Weems is reading the remark out of context. The better reading is that the court didn't buy into Teknor's theory that Weems's "pattern of deception" before the USPTO was enough for a factfinder to determine that Weems's president intended to deceive the USPTO with his alleged affirmative misrepresentation. That observation doesn't foreclose a determination that Weems's lack of candor makes this case exceptional.

Finally, Weems maintains that the fee award lacks a causal connection to the exceptional circumstances the court identified, and so it was punitive (and thus improper) rather than compensatory. We disagree. The district court emphasized that Weems's misconduct affected the entire case, most especially its conduct before the USPTO, which "allowed Weems to drag Teknor into this case in the first place." It also observed, properly we think, that absent Weems's conduct before the USPTO, "the vast amount of resources Teknor, and the court, expended on this case would have been unnecessary if Weems had not first obtained its dubious trademark registration." The court's observations are true even if it's possible, as Weems points out, that Weems could have asserted Lanham Act claims for infringement of an unregistered mark in any case. There's no indication that Weems would have pursued a lawsuit against Teknor without the sword that registration provided, especially since, as the district court found, "Teknor itself has sold various colors of water hoses, including shades of yellow, green and yellow-green, since long before Weems introduced" its chartreuse hoses. And as for Weems's contention that Teknor could have simply obtained summary judgment on the cancellation counterclaim and so should not be entitled to fees accruing thereafter, we agree with the district court that it's too speculative to say whether Teknor would have obtained summary judgment on fact-bound issues of functionality or acquired distinctiveness. We also agree that in this case "[i]t was not imprudent for Teknor to marshal its resources towards trial preparation on these issues rather than pursuing a potentially futile summary judgment motion."

In sum, we discern no abuse of discretion in the district court deeming this an exceptional case that warranted an award of attorneys' fees.

Affirmed.

_____